El Pueblo de Puerto Rico, demandante y apelado, *v.* Avelino Almodóvar, acusado y apelante.

Núm. 8015.—*Sometido:* Abril 15, 1940. *Resuelto:* Abril 19, 1940.

*María Luisa Capó,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Se presentó este recurso contra una sentencia que condenó al acusado a pagar una multa de $25, o en su defecto a cumplir un día de cárcel por cada dólar de multa que dejare de pagar, y las costas.

El acusado es dueño de un depósito de leche y de una vaquería en el pueblo de Sabana Grande. El 16 de marzo de 1939, el Inspector de Sanidad de dicho pueblo se hallaba tomando muestras de leche y observó que por la calle 25 de Julio, el acusado, acompañado de su hijo Julio Almodóvar, conducía un carrito de mano en el cual llevaba dos porrones que contenían como diez cuartillos de leche, procedente de la finca del acusado. Los siguió el Inspector y al llegar al depósito, el acusado tomó los dos porrones y los vació en otro envase que contenía leche acabada de traer en aquellos momentos de otra lechería. Después de esta mezcla, el Inspector de Sanidad tomó la muestra que resultó adulterada. Declaró además el inspector que hacía dos años prestaba

servicios en Sabana Grande y que durante todo ese tiempo había tomado muestras semanalmente de la leche del depósito del acusado, sin que nunca hubiese resultado adulterada.

La prueba de descargo niega que hubiese alguna otra persona en el depósito en los momentos en que se tomó la muestra, por ser muy temprano. El Inspector de Sanidad declaró que había varias personas en el sitio destinado al público, pero de una y otra prueba surge como un hecho cierto que si bien la leche acababa de llegar en aquellos momentos al depósito y se intentaba ofrecerla en venta para el consumo humano, todavía no se había empezado a vender al público. En otras palabras, el establecimiento, aunque con sus puertas abiertas, no estaba aún abierto al público para hacer transacciones.

El acusado no impugnó el resultado del análisis, pero alegó que la evidencia que ante sí tuvo la corte sentenciadora, era insuficiente para sostener la sentencia dictada contra él, e invoca a su favor, entre otros, los casos de *El Pueblo* v. *Andino,* 21 D.P.R. 225, y *El Pueblo* v. *Pérez,* 23 D.P.R. 877. En el caso de *El Pueblo* v. *Andino,* los hechos probados son sustancialmente iguales a los del que ahora nos acupa, con la sola diferencia que allí toda la leche procedía de una tercera persona, mientras que en éste, como hemos visto, procedía de dos distintas vaquerías, diferencia ésta que a nuestro juicio carece de importancia, puesto que habiendo llegado al depósito otra leche con la cual fué mezclada antes de tomarse la muestra, se hizo imposible determinar si en efecto la procedente de la vaquería del acusado era o no la adulterada, y no habiendo empezado sus transacciones el establecimiento, aceptando el resultado del análisis, no puede sostenerse que el acusado estuvo ofreciendo en venta al público leche adulterada.

En el caso de *El Pueblo* v. *Andino,* supra, dijo este tribunal:

"Juan Requena, Inspector de Sanidad, declaró que ocupó alguna leche en el establecimiento de los acusados la que quedó demostrado

por la prueba que estaba adulterada. Repreguntado el inspector por el abogado de los acusados e interrogado a la vez por la corte, manifestó que la leche que se alegó estaba adulterada había llegado precisamente al establecimiento de los acusados cuando él mismo llegó; que la leche acababa de vaciarse en el recipiente y el carretero salía con el jarro que había acabado de vaciar. Ésta fué en sustancia toda la prueba presentada por el Fiscal la que no fué suficiente para declarar culpables a estos acusados.

"Todo lo que la prueba revela es que los acusados habían recibido en aquel momento leche adulterada de una tercera persona. No existe la más mínima prueba de que ofrecieran ellos para la venta la leche adulterada. Ni hay nada que siquiera muestre que dichos acusados hubieran ofrecido en venta la referida leche. La prueba demuestra únicamente que ellos estaban en posesión de la leche adulterada lo que no es lo mismo que probar que la ofrecieran en venta. Los acusados podrían haber examinado la leche y negarse a venderla. Como quiera que fuere la prueba no muestra el delito imputado en la acusación o el que determina el estatuto. Éste es un procedimiento criminal en el cual no se tiene en cuenta la intención criminal, y por tanto hay tal vez mayor razón para que se demuestren fuera de toda duda razonable los elementos especificados en el estatuto."

En el de *El Pueblo* v. *Pérez,* supra, distinguiéndolo del de *Andino,* se dijo:

"Pero sostiene también el apelante que de acuerdo con el caso de *El Pueblo* v. *Andino,* 21 D.P.R. 225, la mera posesión de leche adulterada no es prueba suficiente de que se tenía para la venta o que se ofrecía en venta, caso que no es aplicable al presente porque si bien en él se declaró que la prueba de posesión no era suficiente en aquel caso por sí sola para establecer la culpabilidad, fué porque la leche se había recibido en el depósito precisamente en el momento de llegar el Inspector de Sanidad, cuando acababa de vaciarse en el recipiente y salía el carretero con los envases vacíos, hechos que no ocurrieron en el presente caso. En otras palabras: se absolvió entonces, porque no había tiempo material para tener la leche a la venta." (Págs. 879–880.)

El caso de *El Pueblo* v. *Nieves,* 55 D.P.R. 910, citado por el fiscal, no es de aplicación al de autos. En aquél se aplicó la regla general que se consigna en el de *El Pueblo* v. *Pérez,*

supra, por no existir la circunstancia especial que concurre
en éste y en el de Andino, y además porque en el caso de *El
Pueblo* v. *Nieves* el establecimiento estaba abierto al público,
circunstancia ésta que como hemos visto no concurre en el
caso de autos.

*Por lo expuesto procede, a nuestro juicio, declarar con
lugar el recurso, revocar la sentencia apelada y absolver
libremente al acusado.*